UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**AE FOR MINOR CHILD CE,**

*Plaintiff*,

v.

**MONROE TOWNSHIP PUBLIC SCHOOLS, *et al.***,

*Defendants.*

No. 24-cv-00110

**OPINION**

**APPEARANCES**:

**John C. Uyamadu**
JOHN C. UYAMADU LLC
2 Ridgedale Avenue, Suite 355
Cedar Knolls, NJ 07927

*On behalf of Plaintiff.*

**Matthew J. Behr**
MARSHALL DENNEHEY, P.C.
15000 Midlantic Drive, Suite 200, P.O. Box 5429
Mount Laurel, NJ 08054

*On behalf of Defendants.*

**O'HEARN, District Judge.**

**THIS MATTER** comes before the Court on a Motion for Summary Judgment, (ECF No. 74), by Defendants Monroe Township Public Schools, Williamstown Middle School, Thomas A. Coleman, Jr., David M. Babich, Jimmy Collins, Amy McCarthy, and Thomas McAvoy (collectively "Defendants"). Plaintiff AE, on behalf of Minor Child CE, asserts claims for violation of CE's procedural and substantive due process rights, racial discrimination, and disability discrimination arising under the United States Constitution, the New Jersey Constitution, and the New Jersey Law Against Discrimination ("NJLAD"). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, Defendants' Motion is **GRANTED.**

## I. FACTUAL BACKGROUND[1]

Plaintiff AE ("Plaintiff") is the mother of minor child CE ("CE") and brings this action on his behalf. CE is a former student at Williamstown Middle School in the Monroe Township public school system. (Defs.' SOMF, ECF No. 74-3 at ¶ 1). The individual defendants are current or

---

[1] The facts set forth herein are undisputed unless otherwise noted. The Court notes that Plaintiff failed to comply with Local Civil Rule 56.1(a), which requires a responsive statement of material facts to be filed as a separate document, by instead including responses in her opposition brief. (ECF No. 81, § III). For clarity, the Court cites to Section III of Plaintiff's Opposition when referencing her responses to Defendants' Statement of Undisputed Material Facts ("SOMF"). Moreover, several of Plaintiff's responses to Defendants' SOMF are improper under Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1. For example, Plaintiff denies certain statements without citing evidence that directly controverts the asserted facts, objects to the source cited rather than disputing the underlying fact, or responds that the record speaks for itself. None of these responses is appropriate. Courts routinely disregard SOMF responses that fail to cite contrary evidence or improperly dispute facts without evidentiary support and deem those facts admitted. *See, e.g.*, *McCann v. Unum Provident*, 921 F. Supp. 2d 353, 359 (D.N.J. 2013) (deeming facts admitted where plaintiff failed to meaningfully dispute them). Accordingly, to the extent Plaintiff has failed to properly controvert a fact supported by the record and set forth in Defendants' SOMF, the Court treats that fact as undisputed for purposes of this Motion. *See* FED. R. CIV. P. 56(e)(2).

former employees of Monroe Township. Defendant Jimmy Collins ("Collins") served as assistant principal at Williamstown Middle School and was responsible for investigating student disciplinary matters. (Defs.' SOMF, ECF No. 74-3 at ¶¶ 10, 37). Defendant David M. Babich ("Babich") served as acting principal of Williamstown Middle School from July 1, 2022, to July 1, 2023. (Defs.' SOMF, ECF No. 74-3 at ¶ 35). Defendant Thomas A. Coleman, Jr. ("Coleman") served as interim superintendent from April 21, 2020, to September 13, 2020, and again from July 19, 2023, to January 1, 2024. (Defs.' SOMF, ECF No. 74-3 at ¶¶ 32–33). Coleman did not serve as superintendent during the incidents underlying Plaintiff's claims. (Defs.' SOMF, ECF No. 74-3 at ¶ 34). Defendant Amy McCarthy ("McCarthy") was CE's physical education teacher, and Defendant Thomas McAvoy ("McAvoy") served as a substitute teacher during the April 25, 2023 gym class incident. (Defs.' SOMF, ECF No. 74-3 at ¶¶ 25–30).

CE is African American and has an ocular disability. (Defs.' SOMF, ECF No. 74-3 at ¶¶ 2–4). CE's most recent Section 504 plan identified his conditions as macular hypoplasia and nystagmus, both of which affect his vision. (Defs.' SOMF, ECF No. 74-3 at ¶ 5; Section 504 Plan, ECF No. 74-7). As a result of his ocular disability, CE received certain accommodations under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. (Defs.' SOMF, ECF No. 74-3 at ¶ 3). CE's Section 504 plan provided for accommodations including large-print materials, preferential seating near the board, additional time to complete assessments, and the ability to

move closer to the board as needed.[2] (Defs.' SOMF, ECF No. 74-3 at ¶ 6).

Plaintiff's claims arise from several incidents. In September 2022, CE alleges that two white students spat at him while he was leaving school. (Defs.' SOMF, ECF No. 74-3 at ¶ 18). On September 29, 2022, CE and his mother reported the incident to Collins. (Defs.' SOMF, ECF No. 74-3 at ¶ 20; Pl.'s Resp. to Defs.' SOMF, ECF No. 81, § III, ¶ 18). In response, Collins reviewed the school's closed-circuit television ("CCTV") but did not observe the alleged incident.[3] (Defs.' SOMF, ECF No. 74-3 at ¶¶ 21–23; Collins Dep., ECF No. 74-10 at 51:10–52:17). The footage showed CE walking toward his bus and that the student accused of spitting was not near CE at the time. (Collins Dep., ECF No. 74-10 at 53:4–15). Plaintiff alleges that CE provided Collins the name of one of the responsible students but that Collins did not interview that student, instead relying solely on the CCTV review. (Pl.'s Resp. to Defs.' SOMF, ECF No. 81, § III, ¶¶ 20–21).

Later that school year, on December 22, 2022, two white female students reported that CE sexually harassed them during lunch by stating, "Do you want to go on a ate, I'll give you the D later." (Defs.' SOMF, ECF No. 74-3 at ¶ 7). When questioned by Collins about the allegation, CE

[2] Neither party submitted a Section 504 Plan applicable to the 2022–2023 school year. The record contains a Section 504 Plan dated 2020 and identifies Oak Knoll Elementary as the applicable school. Plaintiff does not dispute Defendants' characterization of the accommodations provided under that Plan. (Defs.' SOMF, ECF No. 74-3 at ¶¶ 3–6; Pl.'s Resp. to Defs.' SOMF, ECF No. 81, § III, ¶¶ 3–6). For purposes of this Motion, the Court treats the accommodations identified in Defendants' SOMF as undisputed.

[3] Where the parties have cited or excerpted deposition testimony at length in their SOMF or responses, the Court will cite to the specific deposition for clarity and precision.

acknowledged making the statement.[4] (Defs.' SOMF, ECF No. 74-3 at ¶ 10; Collins Dep., ECF No. 74-10 at 37:15–21). CE testified that he heard the statement on TikTok and was repeating it to a friend, rather than directing it toward the two female students. (Defs.' SOMF, ECF No. 74-3 at ¶¶ 8–9; CE Dep., ECF No. 74-9 at 32:16–33:11). Collins discussed the allegations with CE before contacting CE's parents. (Collins Dep., ECF No. 74-10 at 33:19–24).

Collins suspended CE pending further investigation and CE was sent home early. (Defs.' SOMF, ECF No. 74-3 at ¶ 11). Plaintiff disputes whether Collins decided to suspend CE before or after questioning him about the alleged statement. (Pl.'s Resp. to Defs.' SOMF, ECF No. 81, § III, ¶¶ 11–12). Plaintiff maintains, without any factual support, that Collins initially intended to suspend CE for approximately ten days while the Harassment, Intimidation, and Bullying ("HIB") investigation proceeded even before questioning him. (Pl.'s Resp. to Defs.' SOMF, ECF No. 81, § III, ¶ 12). But Plaintiff has not identified evidence contradicting Collins's testimony that CE acknowledged making the statement during their conversation. (Pl.'s Resp. to Defs.' SOMF, ECF No. 81, § III, ¶ 10).

After CE's parents requested reconsideration, Collins rescinded the suspension and permitted CE to return to school the following day. (Defs.' SOMF, ECF No. 74-3 at ¶¶ 15–16). Consequently, although CE missed part of the school day on December 22, 2022, he resumed classes as usual the following day. (Defs.' SOMF, ECF No. 74-3 at ¶¶ 16–17).

The school completed an investigation under its HIB policy, which Plaintiff contends

---

[4] Although Plaintiff admitted that Collins provided this testimony, Plaintiff did not expressly admit the underlying facts. (Pl.'s Resp. to Defs.' SOMF, ECF No. 81, § III, ¶ 10). However, Plaintiff has not identified evidence contradicting Collins's account.

ultimately exonerated CE of any wrongdoing. (Pl.'s Resp. to Defs.' SOMF, ECF No. 81, § III, ¶¶ 14, 17; Collins Dep., ECF No. 74-10 at 36:20–25).

Later during the 2022–2023 school year, Plaintiff alleges that two teachers, Defendants McCarthy and McAvoy, discriminated against CE during physical education classes on several occasions. (Defs.' SOMF, ECF No. 74-3 at ¶ 25). First, CE alleges that McCarthy disciplined him during a basketball game after he engaged in what he described as ordinary competitive play. (Defs.' SOMF, ECF No. 74-3 at ¶ 26; CE Dep., ECF No. 74-9 at 42:14–43:4). According to CE, McCarthy called Collins, who removed CE from class and kept him in his office for several periods. (Defs.' SOMF, ECF No. 74-3 at ¶ 26; CE Dep., ECF No. 74-9 at 42:14–43:12). CE also alleges that, during a volleyball game, McCarthy complained that he was diving on the floor and hitting the ball too hard, brought CE to her office, and called his parents. (Defs.' SOMF, ECF No. 74-3 at ¶ 27; CE Dep., ECF No. 74-9 at 44:16–45:8).

On April 25, 2023, CE alleges that Defendant McAvoy, who was substituting during gym class, grabbed him by the arm while he was preparing to shoot a basketball from half-court. (Defs.' SOMF, ECF No. 74-3 at ¶¶ 29–30; Pl.'s Resp. to Defs.' SOMF, ECF No. 81, § III, ¶ 27; CE Dep., ECF No. 74-9 at 46:8–21). CE testified that McAvoy forcibly moved him across the gym, pushed him toward the bleachers, and directed him to remain there for the rest of class. (Defs.' SOMF, ECF No. 74-3 at ¶¶ 29–30; CE Dep., ECF No. 74-9 at 46:8–21, 48:11–20). CE further alleges that McAvoy yelled at him in front of his classmates, causing him embarrassment, and that the incident left a bruise on his arm. (Defs.' SOMF, ECF No. 74-3 at ¶ 30; CE Dep., ECF No. 74-9 at 46:8–21, 48:11–20). On May 2, 2023, CE's father complained to the school's acting principal, Defendant Babich, about McAvoy's conduct during the April 25, 2023 gym class. (Pl.'s Resp. to Defs.'

SOMF, ECF No. 81, § III, ¶ 27). Collins investigated the incident by reviewing CCTV footage and speaking with McAvoy before concluding that the footage did not substantiate CE's allegations. (Pl.'s Resp. to Defs.' SOMF, ECF No. 81, § III, ¶ 29). Plaintiff maintains that McCarthy and McAvoy failed to consider whether CE's visual impairment contributed to the conduct for which he was disciplined. (Defs.' SOMF, ECF No. 74-3 at ¶ 31). CE testified, however, that his visual impairment did not affect his ability to play basketball without corrective eyewear. (CE Dep., ECF No. 74-9 at 17:2–8). Further, CE's Section 504 plan does not identify any accommodation specifically applicable to physical education classes. (Section 504 Plan, ECF No. 74-7).

## II. PROCEDURAL HISTORY

Plaintiff filed her Amended Complaint on July 3, 2024, asserting claims for violations of CE's procedural due process rights (Count II), racial discrimination under the United States and New Jersey Constitutions (Count IV), disability discrimination under the NJLAD, N.J. STAT. ANN. § 10:5-1 *et seq.* (Count VI), and violations of CE's substantive due process rights (Count VII). (ECF No. 24). Defendants moved for summary judgment on April 20, 2026. (ECF No. 74). Plaintiff filed her corrected opposition on June 9, 2026,[5] (ECF No. 81), and Defendants filed their reply on June 8, 2026. (ECF No. 80).

## III. LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute

---

[5] Plaintiff initially opposed the Motion on May 18, 2026. (ECF No. 76). On May 26, 2026, the Court directed Plaintiff to refile her statement of material facts and response to Defendants' statement of material facts because the submissions did not comply with Section V of the Court's Judicial Preferences.

as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material only if it will affect the outcome of a lawsuit under the applicable law" and a "genuine dispute of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party." *Young v. United States*, 152 F. Supp. 3d 337, 345–46 (D.N.J. 2015) (citations omitted). When the Court considers the evidence presented by the parties, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 345–46 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

"The moving party bears the burden of establishing that no genuine issue of material fact remains." *Id.* at 346 (citation omitted). The non-moving party's evidence does not need to be in admissible form to be considered on summary judgment; rather "the court need only determine if the nonmoving party can produce admissible evidence regarding a disputed issue of material fact at trial." *Fraternal Ord. of Police v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016). The nonmoving party, however, must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005) (citation omitted).

## IV. DISCUSSION

For the reasons set forth below, Defendants are entitled to summary judgment on all remaining claims.[6] Accordingly, Defendants' Motion is granted.

---

[6] Plaintiff previously stipulated to the dismissal with prejudice of Counts I, III, and V of the original Complaint. (ECF No. 23).

**A. Procedural Due Process**

The Fourteenth Amendment forbids the State from depriving any person of "life, liberty, or property without due process of law." U.S. CONST. amend. XIV, § 1. "Protected interests in property are normally not created by the Constitution. Rather, they are created and their dimensions are defined by an independent source such as state statutes or rules entitling the citizen to certain benefits." *Goss v. Lopez*, 419 U.S. 565, 572–73 (1975) (citation omitted). Therefore, states may provide their citizens with the right to a public education. *See id.* at 573. Under New Jersey state law, students have a legitimate claim of entitlement to a public education. *See* N.J. CONST. art. VIII, § 4, ¶ 1; N.J. STAT. ANN. § 18A:38-1. Therefore, CE possesses a protected interest in his public education under the Fourteenth Amendment. *See Goss*, 419 U.S. at 572–74.

Although school officials maintain broad authority to prescribe and enforce standards of student conduct, that authority "must be exercised consistently with constitutional safeguards." *Id.* at 574. A student's entitlement to public education "may not be taken away for misconduct without adherence to the minimum procedures required by" the Due Process Clause. *Id.* At a minimum, students facing suspension must be provided notice and an opportunity to be heard. *Id.* at 579. However, the timing and nature of these procedural protections depend on the circumstances. *Id.*

In *Goss*, the Supreme Court established procedural protections for students facing suspension of ten days or less. *Id.* at 581. The Court held that a student must receive "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* However, *Goss* does not require any "delay between the time 'notice' is given and the time of the hearing." *Id.* at 582. Rather, in most instances, the required notice and opportunity to be heard will be an informal

discussion between the school official and the accused student. *Id.* The Due Process Clause does not require school officials to provide a student facing a short suspension with an opportunity to secure counsel, confront or cross-examine witnesses, or present witnesses on his behalf. *Id.* at 583. As the Third Circuit has explained, "[a]s long as the student at least has the opportunity to characterize his conduct and put it in what he deems the proper context, due process has been satisfied." *Palmer by Palmer v. Merluzzi*, 868 F.2d 90, 94 (3d Cir. 1989) (internal quotations, citation, and alterations omitted).

As a general rule, notice and an opportunity to be heard must precede a student's removal from school. *Goss*, 419 U.S. at 582. However, notice may be given at the time of the hearing, and the hearing itself may be informal. *Id.*; *see, e.g.*, *S.G. ex rel. A.G. v. Sayreville Bd. of Educ.*, 333 F.3d 417, 424 (3d Cir. 2003) (a short conversation between a kindergarten student and the principal satisfied the due process requirements). Further, school officials may immediately remove "[s]tudents whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process." *Goss*, 419 U.S. at 582. In such circumstances, the required notice and opportunity to be heard should follow "as soon as practicable." *Id.* at 582–83.

In *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141 (3d Cir. 2005), the Third Circuit applied *Goss* to a student's procedural due process challenge arising from a four-day suspension for alleged sexual misconduct. The student alleged that the assistant principal suspended him without providing the required notice and opportunity to be heard. *Id.* at 149. However, the assistant principal had informed him of the allegations and permitted him to explain his account of the incident before imposing the suspension. *Id.* at 150. The Third Circuit concluded that these procedures satisfied the minimum constitutional requirements established in *Goss*. *Id.*

Applying these principles here, the Court concludes the minimum constitutional requirements under *Goss* were satisfied. There is no dispute that Collins informed CE of the allegations and afforded him an opportunity to explain his conduct before CE was removed from school. (Collins Dep., ECF No. 74-10 at 33:13–24, 37:15–21). Although Plaintiff challenges the circumstances surrounding CE's suspension, Plaintiff has not identified evidence contradicting Collins's testimony that he discussed the allegations with CE and afforded him an opportunity to explain his conduct before CE was removed from school. Rather, Plaintiff responds that Collins had discretion to initiate an HIB investigation and challenges Defendants' deposition citation without identifying contrary testimony. (Pl.'s Resp. to Defs.' SOMF, ECF No. 81, § III, ¶¶ 11–12).

The record establishes that when CE came to Collins's office, Collins informed him of the accusation and permitted CE to explain his conduct. (Collins Dep., ECF No. 74-10 at 33:13–24, 37:15–25; CE Dep., ECF No. 74-9 at 35:6–9). Collins also testified that, when he questioned CE about the allegation, CE acknowledged making the comment and explained that he had heard it on TikTok. (Collins Dep., ECF No. 74-10 at 37:15–21). This informal discussion afforded CE an opportunity to characterize his conduct and provide context for the alleged misconduct, satisfying the minimum procedural protections required by *Goss*. *See Palmer*, 868 F.2d at 94; *Shuman*, 422 F.3d at 150. Although Plaintiff admitted that Collins provided this testimony, Plaintiff did not expressly admit that CE made those statements to Collins. (Pl.'s Resp. to Defs.' SOMF, ECF No. 81, § III, ¶ 10). However, Plaintiff has not identified any contrary testimony or other record evidence disputing Collins's account of their conversation.

Therefore, CE received the notice and opportunity to be heard required by the Fourteenth

Amendment, and Defendants are entitled to summary judgment on Plaintiff's procedural due process claim.

**B. Equal Protection**

*i. Racial Discrimination*

a. Federal Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The Equal Protection Clause also protects against selective enforcement of facially neutral policies. *See Jewish Home of E. PA v. Ctrs. for Medicare and Medicaid Servs.*, 693 F.3d 359, 363 (3d Cir. 2012); *Yick Wo v. Hopkins*, 118 U.S. 356, 373–74 (1886). "To establish a selective enforcement claim under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must demonstrate that he was (1) treated differently from other, similarly situated persons and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor or to prevent the exercise of a fundamental right." *Harvard v. Cesnalis*, 973 F.3d 190, 205 (3d Cir. 2020) (internal quotations omitted). "Persons are similarly situated under the Equal Protection clause when they are alike in all relevant respects." *Id.* (citation omitted). If other factors can explain the disparate treatment, it will usually preclude groups from being similarly situated. *Stradford v. Sec'y Pa. Dep't of Corr.*, 53 F.4th 67, 74 (3d Cir. 2022).

Here, Plaintiff alleges selective enforcement of the school's internal disciplinary review process. (Am. Compl., ECF No. 24, ¶¶ 40–45). Specifically, Plaintiff argues that when CE complained that two white students spat at him, Collins reviewed the CCTV footage and

determined the alleged conduct had not occurred.[7] (Defs.' SOMF, ECF No. 74-3 at ¶¶ 18–23; Collins Dep., ECF No. 74-10 at 51:10–53:15). Similarly, when CE complained that Defendant McAvoy, a white teacher, aggressively removed him from gym class, Collins reviewed the CCTV footage and found that it did not corroborate CE's allegations.[8] (Defs.' SOMF, ECF No. 74-3 at ¶ 29; Pl.'s Resp. to Defs.' SOMF, ECF No. 81, § III, ¶¶ 27, 29). Plaintiff alleges that in contrast, when two white students accused CE of sexual harassment, Collins called CE to his office and suspended him pending an HIB investigation. (Defs.' SOMF, ECF No. 74-3 at ¶¶ 7–11).

Here, Plaintiff's claims fail because she cannot identify persons similarly situated to CE. Plaintiff fails to account for the material differences in these incidents. The allegations against CE involved sexual harassment, whereas the other incidents involved alleged physical misconduct. (Defs.' SOMF, ECF No. 74-3 at ¶¶ 7, 18, 28–30). In addition, and perhaps most importantly, CE admitted to making the statement underlying the sexual harassment allegation, although he maintained that the statement was directed toward another student. (Defs.' SOMF, ECF No. 74-3 at ¶¶ 8–10; CE Dep., ECF No. 74-9 at 32:16–33:11). Collins reviewed CCTV footage concerning the alleged spitting incident and the McAvoy incident and concluded it did not corroborate CE's allegations in either instance. (Defs.' SOMF, ECF No. 74-3 at ¶¶ 21–23; Pl.'s Resp. to Defs.'

---

[7] Plaintiff previously moved for sanctions based on Defendants' failure to preserve CCTV footage relating to the alleged spitting incident and the McAvoy incident. (ECF No. 61). Magistrate Judge King denied the motion, finding that Plaintiff had not established that Defendants were under a duty to preserve the footage. (ECF No. 82).

[8] Although Plaintiff's Fourth Cause of Action does not expressly reference the incident involving McAvoy, the Court considers Collins's handling of that incident as additional comparator evidence in evaluating Plaintiff's equal protection claim. (Am. Compl., ECF No. 24, ¶¶ 40–45).

SOMF, ECF No. 81, § III, ¶ 29; Collins Dep., ECF No. 74-10 at 51:10–53:15, 68:1–6). Further, CE's complaint of misconduct by McAvoy involved a teacher rather than a student, further distinguishing that incident from the investigation of CE's alleged misconduct related to other students.

In short, given the differences in the nature of the allegations, the evidence available to Collins, and the respective roles of CE and the other individuals involved in the incidents, Plaintiff has not established that CE and the other individuals were similarly situated for purposes of an equal protection claim. *See Shuman*, 422 F.3d at 151 (concluding that students were not similarly situated where one admitted misconduct and the other did not); *see also Gazarov ex rel. Gazarov v. Diocese of Erie*, 80 F. App'x 202, 206 (3d Cir. 2003) (distinguishing students based on differences in their underlying misconduct and disciplinary histories); *Davis v. Quaker Valley Sch. Dist.*, No. 13-1329, 2016 WL 912297, at *12 (W.D. Pa. Mar. 10, 2016), *aff'd,* 693 F. App'x 131 (3d Cir. 2017) (rejecting proposed student comparators where the record did not establish behavioral problems of comparable frequency and intensity); *Sabbah v. Springfield Sch. Dist.*, No. 19-5564, 2021 WL 2138792, at *11–12 (E.D. Pa. May 26, 2021) (concluding that a student was not similarly situated to other students who denied involvement where additional evidence implicated her and she admitted to misconduct).

Even if Plaintiff could show that the students were similarly situated, Plaintiff must also show discriminatory intent. *Washington v. Davis*, 426 U.S. 229, 239–42 (1976). Disparate impact alone is not enough. *Id.* at 242. To maintain a selective enforcement action, the plaintiff "must provide evidence of discriminatory purpose, not mere unequal treatment or adverse effect." *Jewish Home*, 693 F.3d at 363 (citation omitted). The plaintiff also "must show that the decisionmaker

selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects." *Id.* (internal quotation and alterations omitted).

Here, Plaintiff has not identified evidence from which a reasonable jury could conclude that Collins's investigative decisions, or the conduct of any other Defendant, were motivated by CE's race. Absent such evidence, Plaintiff cannot establish the discriminatory purpose necessary to sustain a selective enforcement claim. *See Karns v. Shanahan*, 879 F.3d 504, 521 (3d Cir. 2018) (relying on the absence of record evidence to reject a selective enforcement claim where the plaintiffs failed to identify similarly situated individuals who were treated differently or present evidence of discriminatory purpose).

Accordingly, Defendants are entitled to summary judgment on Plaintiff's federal equal protection claim on the basis of race.

b. New Jersey Constitution

Plaintiff also alleges that Defendants discriminated against CE on the basis of race in violation of the New Jersey Constitution. (Am. Compl., ECF No. 24, ¶¶ 40–45). Although the New Jersey Constitution does not contain an express Equal Protection Clause, the New Jersey Supreme Court has recognized equal protection guarantees under Article I, Paragraph 1 of the State Constitution. *Barone v. Dep't of Hum. Servs., Div. of Med. Assistance & Health Servs.*, 526 A.2d 1055, 1062 (N.J. 1987). In evaluating equal protection claims, New Jersey courts employ a flexible balancing test that considers the nature of the affected right, the extent of the governmental restriction, and the public need for that restriction. *Id.* Although this framework differs from the federal Equal Protection analysis, the two approaches often yield the same result. *Id.*

Here, Plaintiff's state constitutional claim rests on the same disciplinary decisions

underlying her federal Equal Protection claim. For the reasons discussed above, Plaintiff has failed to establish that Defendants treated CE differently from similarly situated individuals because of his race and Defendants are entitled to summary judgment on Plaintiff's racial discrimination claim under the New Jersey Constitution.

*ii. Disability Discrimination*

a. NJLAD[9]

The NJLAD prohibits discrimination based on disability in places of public accommodation, including public schools. N.J. STAT. ANN. §§ 10:5-4, 10:5-5(l), 10:5-12(f)(1). To establish disability discrimination, a plaintiff must demonstrate that (1) he has a disability, (2) he is otherwise qualified to participate in the educational program, and (3) he was excluded from participation, denied benefits, or otherwise discriminated against because of his disability. *D.G. v. Somerset Hills Sch. Dist.*, 559 F. Supp. 2d 484, 502–03 (D.N.J. 2008).

Here, Plaintiff contends that CE was discriminated against because Defendants McCarthy and McAvoy repeatedly removed him from physical education classes without consideration of his ocular disability. (Am. Compl., ECF No. 24, ¶¶ 50–53). The parties do not dispute that CE has a visual disability and was otherwise qualified to participate in physical education classes. (Defs.' SOMF, ECF No. 74-3 at ¶¶ 3–6). Rather, the dispute concerns whether CE was excluded from participation or otherwise discriminated against because of his disability. (Pl.'s Resp. to Defs.' SOMF, ECF No. 81, § III, ¶ 25).

[9] Although not clear from the Amended Complaint, Plaintiff appears to bring her disability discrimination claim under the NJLAD. Plaintiff does not refute Defendants' characterization of this claim as arising under the NJLAD. Accordingly, the Court analyzes the claim under that statute.

Plaintiff argues that McCarthy disciplined CE for engaging in ordinary basketball and volleyball activities without considering whether his visual impairment contributed to his conduct and gave CE a failing grade in physical education class. (Am. Compl., ECF No. 24, ¶¶ 50–53; Defs.' SOMF, ECF No. 74-3 at ¶ 31). However, Plaintiff has not identified evidence establishing a connection between CE's disability and the conduct for which he was disciplined. Although Plaintiff argues that CE's disability may have caused him to misjudge distances during gym class, CE's own testimony refutes that argument as he testified that his visual impairment did not affect his ability to play basketball without corrective eyewear. (Am. Compl., ECF No. 24, ¶ 52; Defs.' SOMF, ECF No. 74-3 at ¶ 31; CE Dep., ECF No. 74-9 at 17:2–8). Moreover, Plaintiff has not identified evidence that McCarthy or McAvoy disciplined CE because of his disability rather than their assessment of his conduct during class. Finally, Plaintiff does not identify any evidence attributing CE's failing grade in gym class to CE's disability.

Although Plaintiff disputes Defendants' characterization of CE's conduct that led to the disciplinary incidents, Plaintiff does not identify evidence supporting a finding or even an inference of disability discrimination. (Pl.'s Resp. to Defs.' SOMF, ECF No. 81, § III, ¶ 25). Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim that CE was

discriminated against because of his disability.[10]

b. Equal Protection

Although Count Six principally asserts a disability discrimination claim under the NJLAD, Plaintiff also alleges that Defendants deprived CE of equal protection under the law. (Am. Compl., ECF No. 24, ¶ 56). While it is unclear whether Plaintiff intends to assert a separate disability-based Equal Protection claim, the Court will address the claim for completeness.

The Equal Protection Clause prohibits intentional discrimination against individuals with disabilities, although disability is not a suspect classification. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 442–46 (1985). Accordingly, classifications based on disability are subject to rational basis review. *Id.* at 446; *see also Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 366–68 (2001).

Here, as set forth above, Plaintiff has not identified similarly situated students without disabilities who were treated more favorably or presented evidence that Defendants disciplined CE because of his disability. Rather, the record reflects that McCarthy disciplined CE based on

[10] To the extent Plaintiff asserts Defendants failed to reasonably accommodate CE's visual impairment, that theory likewise fails. The NJLAD requires places of public accommodation, including public schools, to provide reasonable accommodations for individuals with disabilities. *See D.G.*, 559 F. Supp. 2d at 502–03; N.J. ADMIN. CODE § 13:13-4.11. CE's Section 504 plan did not identify any accommodation applicable to physical education classes. (Section 504 Plan, ECF No. 74-7). While the NJLAD does not limit reasonable accommodations to accommodations expressly identified in such a plan, *see* N.J. ADMIN. CODE § 13:13-4.11(a), Plaintiff has not set forth any evidence that CE required accommodations to participate in gym class, that such an accommodation was reasonable and necessary, or that Defendants denied an accommodation. Plaintiff's arguments in this regard are mere speculation and insufficient to establish a genuine issue of material fact.

her assessment of his conduct during physical education classes. (Defs.' SOMF, ECF No. 74-3 at ¶¶ 25–27; CE Dep., ECF No. 74-9 at 42:14–45:8). Accordingly, Defendants are entitled to summary judgment on that claim.[11]

### C. Substantive Due Process

Plaintiff alleges that Defendants violated CE's substantive due process rights by arbitrarily suspending him following allegations of sexual harassment, failing to adequately investigate his complaint that other students spat at him, and repeatedly excluding him from physical education classes.[12] (Am. Compl., ECF No. 24, ¶¶ 55, 57–63). Plaintiff further alleges that the cumulative effect of Defendants' conduct caused CE to leave Williamstown Middle School. (Am. Compl., ECF No. 24, ¶ 61).

It is well settled that the right to a public education is not a fundamental right for purposes of the United States Constitution.[13] *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35

---

[11] Because Plaintiff has failed to establish a disability discrimination claim under either the NJLAD or the Equal Protection Clause, the Court need not reach Defendants' alternative argument that they are entitled to immunity under the Paul D. Coverdell Teacher Protection Act.

[12] Plaintiff's initial Complaint alleged that McAvoy's use of physical force violated CE's Fourteenth Amendment rights. (ECF No. 1, ¶¶ 42–50). The parties subsequently stipulated to the dismissal with prejudice of Plaintiff's assault and battery and related negligence claims. (ECF No. 23). The Amended Complaint does not assert a separate substantive due process claim based on McAvoy's alleged use of physical force, and neither party addresses such a claim in the summary judgment briefing. Accordingly, the Court does not consider whether McAvoy's alleged conduct independently violated CE's substantive due process rights.

[13] Although Plaintiff also invokes the Fifth Amendment, its Due Process Clause applies only to federal governmental action. Because Defendants are state and local actors, Plaintiff's substantive due process claim is analyzed under the Fourteenth Amendment. *See Myers v. Cnty. of Somerset*, 515 F. Supp. 2d 492, 504 (D.N.J. 2007), *aff'd*, 293 F. App'x 915 (3d Cir. 2008).

(1973) ("Education, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected."); *see also Bowers v. NCAA*, 475 F.3d 524, 553 (3d Cir. 2007). Moreover, substantive due process does not protect against every arbitrary or improper act by a government official. Rather, executive conduct must be sufficiently egregious to shock the conscience to establish a substantive due process violation. *See Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 172 (3d Cir. 2001).

Here, Plaintiff's allegations principally concern Defendants' disciplinary decisions and their alleged interference with CE's participation in school activities. However, because there is no fundamental constitutional right to public education, Defendants' alleged interference with CE's educational opportunities does not, standing alone, establish a substantive due process violation. *See Rodriguez*, 411 U.S. at 35; *Bowers*, 475 F.3d at 553. Nor has Plaintiff identified evidence that the challenged disciplinary decisions or investigations involved conduct sufficiently egregious to shock the conscience. Although Plaintiff disputes Defendants' disciplinary decisions, those disputes do not establish a substantive due process violation merely because the decisions may have been unreasonable or mistaken. *See Gottlieb*, 272 F.3d at 172. Therefore, Defendants are entitled to summary judgment as to Plaintiff's substantive due process claim.[14]

[14] Although the Court does not reach Defendants' argument that Plaintiff's substantive due process claim is foreclosed by the more-specific-provision rule, Plaintiff incorrectly contends that Defendants' reliance on that doctrine constitutes an admission that her other constitutional claims are meritorious. The more-specific-provision rule concerns which constitutional provision governs the challenged conduct; invoking that rule does not concede that a violation of the more specific provision occurred. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010).

## V. CONCLUSION

For the foregoing reasons, the Court finds that Defendants are entitled to judgment as a matter of law on all claims. Accordingly, Defendants' Motion for Summary Judgment, (ECF No. 74), is **GRANTED**. An appropriate Order accompanies this Opinion.

Christine P. O'Hearn

**CHRISTINE P. O'HEARN**
**United States District Judge**

Dated: November 20, 2026